UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JULIA BECKMAN                                CASE NO.  5:21-CV-04022

VERSUS                                       JUDGE TERRY A. DOUGHTY

EDWARDS LIFESCIENCES L L C ET AL        MAG. JUDGE KAYLA D. MCCLUSKY

## MEMORANDUM RULING

Pending here is a Motion for Summary Judgment [Doc. No. 21] filed by Defendants Edwards Lifesciences, LLC ("Edwards") and Edwards Lifesciences (US) Inc., ("Edwards US") (collectively "Defendants").   Plaintiff Julia Beckman ("Plaintiff" or "Beckman") filed an Opposition [Doc. No. 25], and Defendants have filed a Reply to the Opposition [Doc. No. 29].

For the reasons set forth herein, Defendants' Motion for Summary Judgment is **GRANTED**.

## I.    FACTS AND PROCEDURAL HISTORY

Edwards is a developer, manufacturer, and seller of medical devices used in surgical procedures.[1]  Specifically, Edwards has developed the Sapien 3 that is used as an alternative to open heart surgery.[2]  Plaintiff began training for employment as a Territory Manager ("TM") at Edwards in October of 2019, where she was flown to Texas, North Carolina, Florida, Alabama, and Mississippi.[3]  In January of 2020, while Plaintiff was still in training, Jason Walker replaced Bob Philpot as the Regional Director and became Plaintiff's supervisor.[4]  Each TM has at least

---

[1] [Doc. No. 25-1 p. 2].
[2] [Id].
[3] [Doc. No. 25-1 p. 5; 25-3 P. 17].
[4] [Doc. No. 25-1 p. 5].

one Field Clinical Specialist ("FCS") assigned to him or her and while it is "super important" that the TM and FCS work closely together, neither are supervisors to each other.[5]

Prior to official employment, Plaintiff received a text from an unknown sender, which later was revealed to be Kayla Coe, Justin Coe's wife.[6]  Justin Coe ("Coe") was the FCS assigned to Plaintiff's territory and was employed at Edwards before Plaintiff was on board.[7]  The text message asked if she (Plaintiff) were working at Willis Knighton that day.[8]

In October of 2019, Coe sent a text message to Plaintiff and set ground rules for communication to be strictly during business hours, despite knowing that Edwards does not have "business hours."[9]  Simultaneously, Coe called Plaintiff and reminded her that he was "happily married."[10]  Plaintiff then called Fred Stevenson ("Stevenson"), Coe's former TM, who was working for Edwards in another territory, to get reassurance that Coe was supportive with her coming on board.[11]  Although the meeting never came to fruition, Plaintiff told Stevenson that she would sit down Kayla Coe to elucidate that she was not a threat to the Coes' marriage.[12]

In March of 2020, Plaintiff officially began her employment as a TM and was notified by Izzy Riddle, a nurse at St. Francis, that doctors in the area, specifically at this point in time, Dr. Zhang, "refused to work with [her]" because Coe allegedly made negative comments about Plaintiff's competence to the doctor.[13]  Walker began having calls with Coe and Plaintiff to facilitate communication between the two.

---

[5] [Doc. No. 21-4 p. 24].
[6] [Doc. No. 25-3 p. 28].
[7] [Doc. No. 25-1 p. 6].
[8] [Id].
[9] [Doc. No. 25-5 p. 7].
[10] [Doc. No. 25-3 p. 30].
[11] [Doc. No. 25-3 p. 30].
[12] [Id].
[13] [Id. at 34].

A few months later, in June of 2020, Kayla Coe sent another text message to Plaintiff which read, "You ruined my family. I hope you are happy with yourself" and "You have no idea what you have caused in my life."[14] Plaintiff did not respond but did report the text message to Stevenson. On or around July 13, 2020, Coe sent an irate text message to Plaintiff about contacting him after 8 p.m. on a Sunday night. This incident was reported to Walker.[15]  Walker then notified Bianca Panariello ("Panariello") in the Human Resources Department regarding the issues.[16]

Plaintiff also alleges that Coe purposefully deleted 3-D images of patient's hearts that is critical for use during a patient's surgical procedure in effort to send her "panicking."[17]  Panariello stated in her notes that Edwards' IT department verified that Coe's credentials had been used to access and delete the files.[18]  However, Coe denied the deletions because he was camping and did not have his computer at the time they occurred.[19]

Panariello began interviewing several people regarding the issues between Plaintiff and Coe, specifically the lack of communication, irate text messages, and alleged deleted patient files.[20] When interviewed, Coe admitted that his wife was uncomfortable with him working with a female.[21]

Shortly after the investigation into these complaints, Edwards provided Coe with strict demands that there was no such thing as business hours, ground rules would be immediately removed, Coe's wife would never communicate with Plaintiff again, and Coe was not to make any negative comments about Plaintiff to anyone other than Walker.[22]   Edwards' instructions

---

[14] [Doc. No. 25-5 p. 5].
[15] [Doc. No. 25-5 p. 1-2; Doc. No. 25-1 p. 7].
[16] [Doc. No. 25-6 p. 27].
[17] [Doc. No. 25-1 p. 10].
[18] [Id].
[19] [Id].
[20] [Id. at 26].
[21] [Id. at 32].
[22] [Doc. Nos. 21-7 p. 18-20; 25-6 p. 54].

concluded with "Please understand the failure to make any of these changes will have implications on your ability to continue as an FCS with Edwards."[23]  Plaintiff admits that the ground rules, business hours, and texts with Coe's wife never reoccurred. However, Coe purportedly continued to attack Plaintiff's character to doctors.[24]

In August of 2020, Walker, and Todd Petering ("Petering") flew to Shreveport to meet with Plaintiff and Coe.[25]  All in attendance discussed the importance of their partnership and confirmed that both Plaintiff and Coe would aim to collaborate in an appropriate manner.[26] However, Plaintiff alleges that at this point in time, collaboration was not the primary problem. Instead, Coe's continuous negative comments to colleagues was the crux of the issue. While in Shreveport, Walker and Petering also met with six doctors to discuss Plaintiff and her clinical competence, among other things.[27]

As stated above, there are numerous allegations regarding the statements Coe purportedly made to six doctors in order to demean Plaintiff.  However, Dr. Kanna Posina ("Dr. Posina") is the only doctor that has been deposed, thus his deposition is the only admissible evidence offered as to any interaction between a doctor and Coe.  Around September or October of 2020, Walker met with Dr. Posina.  Dr. Posina testified that he does not remember who exactly he expressed concerns to about Plaintiff's performance in the operating room, but that if he could not have been provided better support, he would have to use a different device.[28]  Dr. Posina testified that he never talked to Coe regarding the Plaintiff and that Coe had no impact on his perception of Plaintiff.[29]  Walker testified that the incident with Dr. Posina was the "straw that broke the camel's

---

[23] [Id].
[24] [Doc. No. 25-3 p. 50].
[25] [Doc. No. 25-10 p. 40].
[26] [Id].
[27] [Id. at 35].
[28] [Doc No. 21-8 p. 2].
[29] [Id. at 4].

4

back."[30]  On or about November 3, 2020, Walker spoke to Panariello about discharging Plaintiff. However, both decided to give Plaintiff an opportunity to submit a business plan for improvement.[31]  On or about November 5, 2020, Walker notified Panariello of a conversation between he and Plaintiff regarding Coe allegedly undermining Plaintiff to a colleague.[32]  On or around November 8, 2020, Plaintiff responded to Walker with her business plan and Walker testified that after reviewing, "[he] knew there was no coming back."[33] On November 12, 2020, Human Resources decided to discharge Plaintiff.

Plaintiff filed suit in this Court on November 19, 2021, based upon violations of Title VII, 42 U.S.C. § 2000e, *et seq.*, and violations of Louisiana's Employment Discrimination Laws. Plaintiff alleges that Defendants discriminated against her based on her sex and retaliated against her for complaining of sex discrimination. Defendants filed the instant motion on July 14, 2023, arguing that Plaintiff cannot show that she was discharged in retaliation for making a complaint of discrimination.

The issues have been briefed, and the Court is prepared to rule.

## II.     LAW AND ANALYSIS

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by

---

[30] [Doc. No. 21-4 p. 72].
[31] [Id. at 76].
[32] [Doc. No. 25-10 p. 63].
[33] [Id].

identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) ("testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion because there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be)."

B.     **Analysis**

1.     **Sex Discrimination Claim under Title VII and La. Rev. Stat. § 23:332**

"Because the relevant Louisiana Revised Statute 23:332, is 'substantively similar' to Title VII, the outcome will be the same under the federal and state statutes." *La Day v. Catalyst*

*Technology, Inc.,* 3-02 F.2d 474, 477 (5th Cir. 2002). Thus, the claim for sex discrimination under state law will be analyzed under the applicable federal precedents.

First, under the *McDonnell* Douglas test, a Title VII plaintiff alleging gender discrimination must show: (1) that she is a member of a protected class; (2) that she was qualified for the position sought; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class. *Fahim v. Marriott Hotel Servs.,* 551 F.3d 344, 350 (5th Cir. 2008) (citations omitted).

The next step under the *McDonnell* framework is that the burden of production shifts to the employer to provide a legitimate, nondiscriminatory reason for the action.   If the defendant offers such justification, the burden shifts back to plaintiff who can attempt to show the proffered reason is pretextual. To carry this burden in a discrimination case, the plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates. *Wallace v. Methodist Hosp. System*, 271 F.3d 212, 220 (5th Cir.2001). A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence. *Id.*

While Plaintiff has pled sex discrimination in her Complaint, Plaintiff failed to establish any elements of such. The Court agrees with Defendants that Plaintiff is seemingly making a claim for hostile work environment rather than sex discrimination. Moreover, in the Opposition, Plaintiff did not oppose Defendants' contention that the sex discrimination claim was seemingly one of hostile work environment. Thus, any claim for sex discrimination made by Plaintiff in the Complaint is hereby abandoned.

2.        **Hostile Work Environment**

Although Plaintiff has not pled hostile work environment in the affirmative, to the extent that Plaintiff may be asserting such a claim, the Court agrees that Plaintiff does not provide enough evidence to pass the minimal summary judgment threshold.

As pointed out in the Motion for Summary Judgment, Plaintiff's Complaint alleged Edwards discriminated against her based on her sex under Title VII by "not preventing the male subordinate from engaging in discriminatory behavior that adversely affected the **terms and conditions** of Plaintiff's employment" and "by maintaining and perpetuating the barriers the male subordinate had erected that were preventing plaintiff from accessing the local market, allowing the male subordinate to continue to engage in discriminatory conduct, and **failing to support plaintiff in remedying** the injury to her professional reputation that the male subordinate had caused."

These statements make clear that Plaintiff's claim is one for a hostile work environment, rather than sex discrimination. "In order to establish a hostile work-environment claim, a plaintiff must prove five elements: (1) the employee belonged to a protected class; (2) the employee was subject to unwelcome ... harassment; (3) the harassment was based on sex; (4) the harassment affected a **"term, condition, or privilege"** of employment; and (5) the employer knew or should have known of the harassment and **failed to take prompt remedial action**." Furthermore, the test in determining a hostile work environment is the totality of the circumstances, which requires the following to be weighed: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with the employee's work performance. *Friend v. McAdamas*, 861 F. App'x. 825, 830-31 (5th Cir. 2021).

In this case, only the fourth and fifth elements are at issue between the parties.

### a.  Harassment Affected Term, Condition, or Privilege of Employment

Plaintiff's case is fixated on Coe's lack of communication and allegations that Coe continuously attacked Plaintiff's clinical competence to numerous doctors. However, what people told her that they heard someone else say is clearly inadmissible.

In *Hamilton v. Dallas County*, 2023 WL 5316716 (5th Cir. 2023), the Fifth Circuit used the language of a hostile work environment claim to guide the construction of the same text for disparate treatment claims.  Thus, it purportedly expanded "term, conditions, or privileges of employment" beyond ultimate employment decisions for disparate treatment claims, yet still agreed that a hostile work environment claim must be sufficiently severe or pervasive. *Id*. at 6. Harassment must be "severe or pervasive" enough to create an abusive working environment in order for the plaintiff to recover. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008).

Plaintiff cannot show Coe's alleged harassment rose to the level of "severe or pervasive." Impudent emojis, presumptuous rules for communication, and lack of acknowledgement, while certainly ill-mannered, do not rise to the level of "severe or pervasive."  "The 'mere utterance of an ... epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment." *Shepard v. Comptroller of Public Account of State of Texas,* 168 F.3 871, 874 (5th Cir. 1999).  Title VII does not impose a general civility code on employers. *West v. City of Houston, Texas*, 960 F.3d 736, 737 (5th Cir. 2020) (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 118 U.S. 998, 140 L.Ed.2d 201 (1998)).

Plaintiff admitted that after the first meeting between Coe and Plaintiff, which was facilitated by Walker and Petering, communication was no longer the issue. Thus, Plaintiff argued

that the only remaining issue was Coe's alleged derogatory comments to doctors. Although disparaging comments may rise to a level to defeat a motion for summary judgment in certain circumstances, Plaintiff, despite having the names of all doctors for over a year whom Coe allegedly spoke to, did not offer any evidence that Coe's alleged statements would be admissible. Plaintiff rather stated that she "heard from [her] colleagues" that Coe was the one making negative statements to doctors. Coe's alleged conversations with doctors about Plaintiff's competence are purely speculative and unsubstantiated assertions.

Therefore, because Defendants have established that Plaintiff cannot meet an essential element of the claim, the Court will not discuss any further elements of a hostile work environment claim. Accordingly, to the extent Plaintiff is making a claim for harassment or hostile work environment, Defendants are entitled to judgment as a matter of law dismissing such claim.

### 3.     Retaliation Claims Under Title VII and La. Rev. Stat. § 23:967

Standards governing both claims under Title VII and La R.S. 23:967 are materially indistinguishable. *Strong v. Univ. Healthcare Systems, L.L.C.*, 482 F.3d 802, 805 (5th Cir. 2007). The Fifth Circuit and Louisiana state courts have consistently cited to Title VII standards in interpreting La. Rev. Stat. § 23:967. *Rayborn v. Bossier Parish School Board.,* 881 F.3d 409, 415 (5th Cir. 2018).  An employee establishes a *prima facie* case for unlawful retaliation by proving: (1) that she engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse employment action. *Id.*  Defendants cite to *Wilson v. Tregre*, 787 F.3d 322, 326 (5th Cir. 2015), which states that to qualify for protection under the Louisiana Whistleblower Statute, a plaintiff must prove that his employer committed an "actual violation of state law" compared to Title VII's

10

requirement that an employee only need to "reasonably believe" that Title VII has been violated. *Badgerow v. REJ Properties, Inc*. 974 F.3d 610, 619 (5th Cir. 2020).

However, if Plaintiff successfully establishes a *prima facie* case, the burden shifts to Defendant to produce a legitimate, nonretaliatory reason for the adverse employment action. *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 490 (5th Cir. 2014).  If Defendant makes this showing, the burden shifts back to Plaintiff to prove that Defendants proffered reason is actually pretext for retaliation. *Id*. An employee establishes pretext by proving that "but for" the protected activity, he would not have suffered the employment actions of which he complains. *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

### a.  *Prima Facie* Case for Retaliation

Here, Defendants state that "for purposes of this motion only, Defendants assume that Plaintiff's complaints are a protected activity and that the time between the November 4, 2020, complaint and Plaintiff's discharge establishes the casual link."[34]  However, it is alleged by Defendants that Plaintiff cannot prove that the employer was in actual violation of state law as required under Louisiana Whistleblower's Statute because Plaintiff cannot prove that Defendants discriminated against her because of sex.

Assuming Plaintiff establishes a *prima facie* case for retaliation under Title VII, Plaintiff does not have a claim for retaliation under the Louisiana Whistleblower Statute because there is no genuine dispute regarding whether there was an actual violation of the law, such as sex discrimination or hostile work environment.

---

[34] [Doc. No. 21-1 p. 18].

### b. Legitimate, Nondiscriminatory Reason

Defendants contend that there was a legitimate, nondiscriminatory reason for termination, i.e., the complaint from Dr. Posina that was the proverbial "straw that broke the camel's back." The Court finds that Defendants have, at the least, articulated a legitimate, nondiscriminatory reason for Plaintiff's termination.

In *Allaudin v. Perry's Restaurants, Limited*, 805 Fed.Appx.297, 298 (5th Cir. 2020), the Fifth Circuit stated that proof of a customer's complaint and poor work performance is sufficient reasoning for termination. Here, the Court greatly considers Dr. Posina's testimony. Additionally, Dr. Posina was a "customer" of Edwards as was the circumstances in *Allaudin*.

The Court finds that Defendants have met their burden of proving a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

### c. Pretext

Plaintiff contends that there is no basis to argue the issue of pretext because Plaintiff assumes Defendants allegedly cannot meet its burden of proving a legitimate, discriminatory reason. "Pretext can be established by showing disparate treatment or by demonstrating that [employer's] proffered explanation is false or unworthy of credence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Timing alone is not enough to establish evidence of pretext. *Id*. at 300. A Title VII retaliation claim must meet a higher standard of causation, such that a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015). Plaintiff's reliance on "physician complaints" as pretext for terminating her employment is ineffective because Plaintiff fails to offer any material fact that Defendants' reasoning was the result of disparate treatment or false and unworthy.

For the sake of argument, if Plaintiff had been able to establish all other elements of a claim for retaliation, she cannot meet the but for standard of pretext because she cannot testify that Walker's purported reason for termination, i.e., the physician complaints, were due to Plaintiff's protected activity.

> Q Okay. So you don't have any knowledge one way or the other as to whether or not doctors complained to Jason about you?
>
> A To Jason?
>
> Q To Jason. Right.
>
> A I do not know.
>
> Q Do you have any knowledge one way or the other whether doctors complained to Todd about you?
>
> A No idea.
>
> Q So could you say -- I mean, if it was said to you one of the reasons that you were discharged was that there were several complaints from doctors that you were not sufficiently competent to perform the duties of the job, would you be able to say that's false?
>
> A I have no idea about that.

Moreover, when asked why Plaintiff connected her discharge to her complaints, she stated that it was because Panariello was more curt during the November investigation than during the July one. Further, Plaintiff states that she "does not need to show that Edwards' articulated reason for firing her is pretextual, because Edwards's reason for firing her—the alleged doctor complaints—is not a non-discriminatory reason."[35] Again, Plaintiff does not show that the doctor complaints are inevitably the result of Coe's negative comments.

The Court finds that Plaintiff has failed to satisfy her burden of showing pretext and that there is no genuine issue of material fact on this issue.

---

[35] [Doc. No. 25 p. 8].

### III.  CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [Doc. No. 21] filed by Defendants is **GRANTED** with regards to the sex discrimination and retaliation claim under both Title VII and La. Rev. Stat. § 23:967. Additionally, to the extent Plaintiff may be asserting a hostile work environment claim, the Motion for Summary Judgment is **GRANTED**. Plaintiff's sex discrimination, retaliation, and hostile work environment claims are hereby **DISMISSED WITH PREJUDICE**.

**Monroe, Louisiana,** this 25th day of September, 2023.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE